**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION**

---

**GEORGE PARKER MULLEN**                                                    **PLAINTIFF**

**V.**                                                                    **CASE NO. 3:08CV28**

**THE CITY OF GRENADA, MISSISSIPPI
GRENADA POLICE CHIEF RICKY DOWNS
GRENADA COUNCILMAN STEVE RICHARDSON
GRENADA CITY MANAGER SIDNEY RUNNELLS**                    **DEFENDANTS**

---

## <u>ORDER</u>

This cause comes before the court on the motion of defendants The City of Grenada, Mississippi, Chief Ricky Downs, Dr. Steve Richardson, and Sidney Runnels, for summary judgment.

Plaintiff, George Parker Mullen, was employed by the Grenada Police Department on two separate occasions. Mullen worked for the department from 1999 til 2001 when he was terminated after being accused of stealing some shelled corn.

Mullen then worked for the North Central Narcotics Taskforce, the Clarksdale Police Department and the Montgomery County Sheriff's Department. In 2006 he returned to the Grenada Police Department.

In February 2007, Mullen was appointed to Grenada's drug task force. On March 10, 2007, Mullen had several Red Bull and vodka drinks at a local bar. Later that evening Mullen experienced a bout of temporary impotence. Mullen attributes his impotency to the fact his drink was "spiked" with cocaine.

Om March 13, 2007, Mullen and other members of the drug task force were drug tested.

Each officer submitted to both a urine and hair test. Mullen's urine tested positive for cocaine. His hair tested negative. Following the positive test Mullen was suspended from duty until April 2, 2007.

During the period he was suspended Councilman Richardson, who is also a dentist, took a number of actions related to Mullen's test. Sometime on the afternoon of March 16 Richardson learned from City Manager Sidney Runnels that Mullen had failed a drug test. The next day he gathered all his dental practice employees to discuss Mullen's test. He then instructed his employee, Jessica Davis, to call her friends in order to inquire about other possible drug use by Mullen. After meeting with his staff Mullen then proceeded to discuss the failed test with various patients.

On April 2 Mullen was given the choice between resigning or being fired. He refused to resign and was terminated.

After his termination Mullen appealed that decision through the grievance process. His grievance hearing was before the City Council on May 14, 2007. At that hearing Runnels represented to the City Council that if Mullen was not fired they would never be able to terminate anyone in the future for failing a drug test. He also stated that Grenada had a zero tolerance policy and they had no choice but to affirm Mullen's firing. In actuality, Grenada's policy gave decision makers discretion in choosing how to deal with a failed drug test, specifically contemplating lesser sanctions than termination.

Mullen's termination was upheld by a divided Council. Aggrieved Mullen filed the instant suit. The suit asserts claims brought under 42 U.S.C. § 1983 as well as state law claims of defamation, invasion of privacy and wrongful termination. Mullen's claims under section

1983 are that he was denied his right to due process through the grievance process, that his liberty interest in clearing himself of the charges was taken away, and that his due process rights were violated through breach of his confidential information arising under the Fourteenth Amendment.

The defendants subsequently filed the instant motion for summary judgment.

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In reviewing the evidence, this Court must draw all reasonable inferences in favor of the nonmoving party, and avoid credibility determinations and weighing of the evidence. *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000). In so doing, the Court must disregard all evidence favorable to the moving party that the jury is not required to believe. *Reeves*, 530 U.S. at 151, 120 S.Ct. at 2110.

Mullen's first cause of action is a due process in employment claim. He argues that because Runnels deliberately mislead the City Council as to the range of disciplinary options for an employee who failed a drug test his right to a fair hearing was denied.

Grenada argues that because Mullen does not have a property interest in continued employment he is not entitled to due process protections.

In order to succeed on a Section 1983 claim under the theory his due process rights were

violated in denying him his right to continued employment a plaintiff must show he had a property right in his job which triggered the need for due process. *Board of Regents v. Roth*, 408 U.S. 564, 569-70 (1972). The existence of a property right in employment is determined by state law. *Johnson v. Southwest Mississippi Regional Medical Center*, 878 F.2d 856, 858 (5th Cir. 1989) (citing *Bishop v. Wood*, 426 U.S. 341, 344 (1976); *Board of Regents*, 408 U.S. at 577). A property interest may be created by statute, written contract, or "a 'mutually explicit understanding' enforceable under state law as an implied contract." *Id*. (citing *Perry v. Sindermann*, 408 U.S. 593, 601-02 (1972)).

In *McMillian v. City of Hazlehurst*, the Fifth Circuit ruled that Mississippi municipal police officers are at will employees without a protected property interest in continued employment. 620 F.2d 484, 485 (5th Cir. 1980) (citing Miss. Code Ann. § 21-3-5; *Sartin v. City of Columbus Utilities Commission*, 421 F.Supp. 393 (N.D. Miss. 1976)). Mississippi common law also holds to a strong presumption that employment is at will. *Relliford v. Holly Springs, MS*, 1995 WL 1945432, at *4 (N.D. Miss. Aug. 21, 1995) (citing *Perry v. Sears, Roebuck & Co.*, 508 So.2d 1086, 1088 (Miss. 1987)). In general these cases stand for the proposition that municipal police officers do not have a property interest in their employment.

However, cities can adopt policies creating such a property right. In this instance Mullen argues his employee handbook created a protected property right. In *Bobbitt v. Orchard, Ltd.* the Mississippi Supreme Court held an employee handbook could create employer obligations. 603 So.2d 356, 361 (Miss. 1992); *see also Robinson v. Board of Trustees of East Central Junior College*, 477 So.2d 1352 (Miss. 1985). In making its decision the court framed the issue asking:

when an offense specifically covered by the employer's own manual

> provides no more severe disciplining than a warning or counseling of the
> employee, may the employer pay no attention to the manual and fire the
> employee instead?

*Id*. The court answered its question "[w]e hold the employer to its word." *Id*.

Grenada did not create a property right in Mullen's continued employment. The handbook specifically states "[n]othing contained in this Handbook is to be construed as a guarantee of continued employment." The handbook also makes clear all employees are "at will and are subject to termination at any time, for any reason."

There are a number of cases in this Circuit which hold at will employees do not have a protected property interest and thus do not have a right to a due process hearing. *See e.g. Schultea v. Wood*, 27 F.3d 1112 (5th Cir. 1994). Grenada is correct in asserting that Mullen did not have a property interest in his continued employment which would trigger due process protections.

However, that argument still leaves unresolved the question of whether Mullen had a constitutionally protected interest in Grenada following its grievance procedures. The procedure in question granted an automatic appeal of termination to the Board of Aldermen.

Under Mississippi law "[a]ll contracts contain an implied covenant of good faith and fair dealing in performance and enforcement." *Limbert v. Mississippi University for Women Alumnae Ass'n, Inc.*, 998 So.2d 993, 998 (Miss. 2008) (citing *Morris v. Macione*, 546 So.2d 969, 971 (Miss. 1989)). Good faith requires a faithfulness to an agreed purpose consistent with the justified expectations of the parties. *Id*. (citing *Cenac v. Murry*, 609 So.2d 1257, 1272 (Miss. 1992). Bad faith requires conscious wrongdoing based on a dishonest purpose or moral obliquity. *Id*. (citing *Univ. of S. Miss. v. Williams*, 891 So.2d 160, 170-71 (Miss. 2004)).

To the extent Grenada had an obligation to conduct a hearing the law of contracts clearly required it to act in good faith. Mullen had a justified expectation that any hearing would be a meaningful hearing. However, it is well settled that Mullen could not have a constitutionally protected interest in the hearing itself. The failure to provide a hearing, required by a handbook, is simply a breach of contract and such a claim is not cognizable under Section 1983. *Braden v. Texas A & M University System*, 636 F.2d 90, 93 (5th Cir. 1981).

Based on the above reasoning the court will grant summary judgment as to this initial claim.

Mullen's next raises a "liberty interest" claim. Here Mullen brings action alleging Grenada besmirched his reputation and denied him an opportunity to clear his name.

"[D]ischarge from public employment under circumstances that put [an] employee's reputation, honor or integrity at stake gives rise to a liberty interest . . . [and] to a procedural opportunity to clear one's name." *Rosenstein v. City of Dallas, Tex.*, 876 F.2d 392, 395 (5th Cir. 1989) (internal citations omitted). The process required does not mean the government has to reconsider its decision, only that it must give the employee a public forum from which to clear his name. *Id.* (citing *Board of Regents*, 408 at 573 n.12). In order to succeed on such a claim an employee must prove: (1) he was discharged; (2) defamatory charges were made against him; (3) the charges were false; (4) no meaningful hearing was conducted pre-discharge; (5) the charges were made public; (6) he requested a hearing to clear his name; and, (7) his request was denied. *Id.* (internal citations omitted).

For the purposes of summary judgment Grenada only disputes that Mullen requested a hearing, that he was denied a hearing, and that the charges against him were false.

It is undisputed that Mullen did not request a name clearing hearing. He did, however, request a grievance hearing in order to have his job reinstated. "A discharged employee need not use the term 'name-clearing hearing'" in order to meet the element of requesting a hearing. *Id*. at 396. In *Rosenstein*, the Fifth Circuit found the plaintiff's request for an appeal hearing satisfied the requirement even if that request was designed to retain his employment, not to clear his name. *Id*.

The evidence before the court indicates Mullen requested a hearing in order to explain the context of his failed drug test and to explain he was not a drug user. This is enough to satisfy the request requirement.

Mullen got a hearing. As discussed above there is an open question as to whether that hearing was meaningful in the context of having a fair opportunity to regain his employment. However, less is required of the defendants under this claim.

There is, however, a material question as to whether this hearing offered Mullen even the minimally required chance to clear his name. Little information about the nature of the hearing has been provided to the court. It appears the hearing was closed. If the hearing itself was not public Mullen was not provided with the necessary opportunity to clear his name.

Grenada next argues Mullen can not show the charges against him were false. Certainly Mullen can not show he did not fail a drug test. However, the charges connected with this event appear to be much broader. Mullen has been accused of a variety of negative acts including being a drug addict. The affidavits and declarations submitted raise material questions of fact as to whether these charges are true.

Mullen has successfully rebutted each of the three reasons given by Grenada to grant

summary judgment on this claim.

Mullen's third claim is a breach of confidentiality claim brought under the Fourteenth Amendment.

There is no specific "right to privacy" in the Constitution, but the Supreme Court has recognized "zones of privacy" that impose limits on governmental powers. *Roe v. Wade*, 410 U.S. 113, 152-53 (1973). Under the instant theory citizens have the right to "informational privacy." *Whalen v. Roe*, 429 U.S. 589, 598-99 (1977). There is a constitutional "individual interest in avoiding disclosure of personal matters." *Id.* at 599.

The Fifth Circuit has not adopted a test to determine if the information disclosed is of such a personal nature as to give rise to a cause of action. *Zaffuto v. City of Hammond*, 308 F.3d 485, 490 (5th Cir. 2002). It is clear that only the most intimate details of one's life or the most harmful type of statements can make such a disclosure a violation of one's constitutional rights. *Id.*

The allegation in this case relates to statements that Mullen abused drugs. The abuse of drugs is one of the types of allegations the Fifth Circuit has put under the protection of the Fourteenth Amendment. *American Civil Liberties Union of Mississippi, Inc. v. State of Mississippi*, 911 F.2d 1066, 1070 (5th Cir. 1990). As such the court will deny summary judgment on that ground.

However, Grenada also argues that Mullen did not have a reasonable expectation of privacy. Defendants find this requirement in *Nixon v. Administrator of General Services*, 433 U.S. 425, 458 (1977). While neither party cites binding authority as to this test, it appears the proper test actually requires balancing one's expectation of privacy against the need for

disclosure.  *See National Treasury Employees Union v. United States Dept. of Treasury*, 25 F.3d 237, 242-43 (5th Cir. 1994) (citing *Woodland v. City of Houston*, 940 F.2d 134, 138 (5th Cir. 1991); *Fraternal Order of Police, Lodge 5 v. City of Phila.*, 812 F.2d 105, 110 (3d Cir. 1987)).

In *Nixon* the court held "any intrusion [on privacy] must be weighed against the public interest in subjecting the Presidential materials . . . to archival screening."  *Id*.  In that case the court upheld the disclosure of personal information.  *Id*. at 465  However, that disclosure was limited.  *Id*.  The information was not turned over to the general public, but instead to a small group of archivists whose discretion was unquestioned.  The information those archivists found to be personal in nature was then returned to President Nixon so that he might keep it from public view.  *Id*. at 458-59.   The Supreme Court summed up its weighing process writing

> [T]he constitutionality of the Act must be viewed in the context of the limited intrusion of the screening process, of appellant's status as a public figure, of his lack of any expectation of privacy in the overwhelming majority of the materials, of the important public interest in preservation of the materials, and of the virtual impossibility of segregating the small quantity of private materials without comprehensive screening.

*Id*. at 465.

Defendants cite *National Treasury Employees Union* for the proposition that government employees do not have any expectation of privacy related to their history of drug or alcohol abuse.  25 F.3d 237 (5th Cir. 1994).  The case actually stands for the proposition that government employees in a position of "public trust" have a diminished expectation of privacy as to their drug use.  *Id*. at 244.  The Fifth Circuit then goes on to distinguish between most government employees and those with such responsibilities that they must sacrifice some privacy  in order for "the public to repose trust and confidence in them."  *Id*.

The court in this instance does not need to determine whether Mullen is such a governmental employee, because of the nature of the disclosure. In *National Treasury Employees Union*, the Fifth Circuit found a diminished expectation of privacy allowing the Internal Revenue Service to inquire about employees' past drug use. *Id.* The court clearly points out that this information will "certainly not [be disclosed] to the public." *Id.*

There is no dispute that Mullen had to submit to drug testing in order to be a narcotics officer. However, there is no legitimate reason for that information to be disclosed to the general public. No weighing of these factors can allow for public disclosure of this fact.

Defendants next assert that Mullen can not establish municipal liability. A municipality can not be liable unless the alleged constitutional violation results from a municipal custom or policy. *Monell v. Dept. of Social Servs.*, 436 U.S. 658 (1978).

Mullen only argues that Runnels' actions in falsely informing the Board there was a zero tolerance policy for drug testing meets this requirement. As discussed above this is not a constitutional violation. As such the court will grant summary judgment to the City of Grenada and to Downs, Richardson, and Runnels for the claims brought against them in their official capacities.

The individual defendants next ask the court to grant summary judgment because they are entitled to qualified immunity. Defendants fail to explain to which claims or in what manner this immunity should apply. As such the court can not address this defense.

Defendants next ask the court to dismiss the state law claims of slander, wrongful termination and invasion of privacy.

Defendants' argument as to why the slander claim should be dismissed lacks merit. They

insist that Mullen has such a strong reputation as a drug abuser that he can not be slandered in this area. There is obviously a dispute as to those facts. Mullen denies drug use. He also offers independent evidence showing he has passed a number of drug tests. This is the type of dispute that can only be settled by the trier of fact.

The statements alleged do not fit into the "rhetorical hyperbole" exception defendants ask this court to apply. *See Keohane v. Wilkerson*, 859 P.2d 291, 296 (Colo. Ct. App. 1993). *Keohane* lays out a test under which statements which cannot be said to state actual facts are actionable as defamation. *Id*. The test applied by the court is whether something can be distilled to the essence of truth or falsity. *Id*. Whether Mullen is a drug addict is certainly a statement that can be shown to be true or false. Defendants offer no real rebuttal to that point. Summary judgment on this ground shall be denied.

Defendants next address Mullen's wrongful termination claim. Mullen concedes he has no claim under this theory.

The final claim attacked by defendants is Mullen's Invasion of Privacy tort. This is actually two separate claims, one for public disclosure of private facts and one for portrayal of a person in a false light. *Williamson ex rel. Williamson v. Keith*, 786 So.2d 390, 396 (Miss. 2001).

As to the public disclosure of private facts Richardson makes two arguments: (1) he did not publicize the information; and, (2) he was justified in publicizing the facts because they involved an important public concern. As discussed *infra* Richardson did publicize the information.

The more difficult question is whether such publication is protected because the facts were of public concern. The Supreme Court has held "privacy concerns give way when balanced

against the interest in publishing matters of public importance." *Bartnicki v. Vopper*, 532 U.S.
514, 534 (2001). "Public concern" is defined as "something that is a subject of legitimate news
interest; that is, a subject of general interest and of value and concern to the public at the time of
publication." *City of San Diego, Cal. v. Roe*, 543 U.S. 77, 83-84 (2004) (citing *Cox
Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975); *Time, Inc. v. Hill*, 385 U.S. 374, 387-88
(1967)).

Certainly a police officer using illicit drugs could be a matter of public concern. In
making a determination of whether it was a public concern in the instant matter the court must
consider "the content, form, and context of a given statement, as revealed by the whole record."
*Connick v. Myers*, 461 U.S. 138, 147-48 (1983). In applying this test the Supreme Court has
found that criticism of public officials was not speech of public importance when it was between
employees of those officials where the defendant "did not seek to inform the public." *Id*. at 148.

Taking the evidence in the light most favorable to Mullen, Richardson was not discussing
a matter of public importance. The evidence could support a theory that Richardson was acting
as a gossip unconcerned with the function of the police department. It also could support a
finding that Richardson's only purpose was to embarrass Mullen. Based on these findings
Richardson is not entitled to summary judgment on this claim.

Mullen's next claim is that Richardson and Runnels portrayed him in a false light. Under
Mississippi law to prove portrayal of a person in a false light a plaintiff must show:

(a)     the false light in which the other was placed would be highly
        offensive to a reasonable person, and

(b)     the actor had knowledge of or acted in reckless disregard as to the
        falsity of the publicized matter and the false light in which the

12

other would be placed.

*Prescott v. Bay St. Louis Newspapers, Inc.*, 497 So.2d 77, 79 (Miss. 1986).

The claim against Richardson involves him telling his patients and staff that Mullen failed a hair follicle drug test and that he was in danger of dying from his use of drugs. The claim against Runnels is based on Runnels' appearance on television in which he stated he fired Mullen for being a drug addict.

Richardson claims he did not publicize the statements in question. False light claims require "public disclosure." *Davis v. Smart Corp.*, 1997 WL 786763, at *8 (N.D. Miss. Dec. 8, 1997) (citing *Blackthorne v. Posner*, 883 F.Supp. 1443, 1456 (D.Or. 1995)). Mississippi state courts have not defined the extent to which such a statement must disseminate through a community to be actionable. The *Davis* court followed the majority rule holding a statement must be broadcast to at least enough persons to become a "'matter of public knowledge.'" *Id.* (quoting *Hart v. Seven Resorts, Inc.*, 1997 WL 211647, at *7 (Ariz. Ct. App. May 1, 1997)).

Richardson made statements to his employees and patients regarding Mullen. Additionally, he told at least one of his employees to make calls to her acquaintances regarding his statements. Richardson cites to only one case in which a court found making statements to co-workers was not publicizing a statement sufficient to support the tort. *See Doe v. Methodist Hosp.*, 690 N.E.2d 681, 692 (Ind. 1997). In that case the defendant told the only co-worker in the dark that plaintiff had HIV. *Id.*

In this case Richardson's facts went much further. He spread the information not to one employee, but to his entire staff. He also spread the information haphazardly to patients whom he knew or should have known would further disseminate this information throughout the

community.  As such the court finds Richardson is not entitled to summary judgment on this ground.

The court next addresses Mullen's claim against Runnels.  Runnels makes no serious argument that he is entitled to summary judgment.  He halfheartedly argues that because he did not use Mullen's name is stating that a city councilman's son was a drug addict his statement was not "clearly directed at Mullen."  *See Mize v. Harvey Shapiro Enterprises, Inc.*, 714 F.Supp. 220, 224 (N.D. Miss. 1989).  Mullen's father is a councilman in Grenada.  Deposition testimony makes it clear knowledge Mullen's termination had spread throughout the Grenada area.  The context of these statements makes it clear they were directed at Mullen.  No one even nominally informed of current events in Grenada could have failed to understand Runnels was speaking in reference to Mullen.

Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART.

Summary judgment is granted for all claims against the City of Grenada, Ricky Downs in his official capacity, Steve Richardson in his official capacity, and Sidney Runnels in his official capacity.  Summary judgment is granted as to Mullen's claims for due process in employment and wrongful termination.  Summary judgment as to Mullen's other claims is denied.

This the 31st day of March, 2010.

**/s/ MICHAEL P. MILLS**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**